# JOSEPH MUIR *vs.* L. WESLEY BEAUCHAMP.

*Contested Election—Defective Ballots—Insufficiency of Record on Appeal to Present Rulings of Trial Court.*

A petition in a contested election case set forth that the petitioner and the respondent were opposing candidates for a county office at a certain election ; that respondent had been returned as elected and said return was erroneous, and petitioner had received a larger number of votes than the respondent; that the judges of election had wrongfully counted for respondent ballots illegally marked, and had failed to count for petitioner ballots legally cast for him. The petition contained other allegations as to the erroneous counting of ballots and alleged that if the mistakes were corrected it would be made to appear that the petitioner had been elected. The answer denied the allegation of the petition and averred that the mistakes made by the judges of election were to the prejudice of the respondent, &c. Testimony was taken and the Court below ordered that since it appeared from the pleadings and evidence that petitioner had received the greater number of votes at said election, he was declared to have been duly elected. Upon appeal from this order the record did not contain authenticated copies of the ballots objected to by the respective parties, but an uncertified exhibit was presented to this Court containing 367 ballots of the official form used at the election and marked in imitation of the voters' marks as made upon the ballots actually used in evidence. It was not made to appear what specific objections were made by the parties to these ballots, nor what were the rulings of the Court with respect to all of them, nor was there any statement showing what questions of law were passed upon by the trial Court. *Held*, that there is nothing in the record thus presented as to which error can be assigned since it does not appear what were the rulings of the Court as to any particular ballots, or as to the admissibility of evidence, and this Court is precluded by Code, Art. 5 sec. 9 from deciding any question which does not appear by the record to have been tried and decided by the Court below.

Appeal from the Circuit Court for Somerset County, (PAGE, C. J., and HOLLAND J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES JJ.

*John C. Rose*, for the appellant.

*Joshua W. Miles,* (with whom were *H. L. D. Stanford* and *H. Filmore Lankford* on the brief) for the appellee.

Jones J., delivered the opinion of the Court.

In this case the appellant and the appellee were, at the election which occurred in the fall of 1899, opposing candidates for the office of County Commissioner of Somerset County.   The Board of Supervisors of Election for that county, having canvassed and added up the votes as contained in the statements and returns transmitted to them, in turn transmitted to the Clerk of the Circuit Court of the county a statement, duly attested, from which it appeared that the appellee had received twenty-seven hundred and ten (2,710) votes, and that the appellant had received twenty-seven hundred and forty-three (2,743) votes; and the appellant was, by the said Board, declared duly elected to the office which is the subject of contest here.   Thereupon the appellee began in the Circuit Court for Somerset County a contest for the said office by petition filed in that Court on the 13th of November, 1899.   On the 14th of December, 1899, he filed an amended petition.   The subsequent proceedings in the case were had with reference to the allegations contained in this amended petition.   These allegations were, in substance, that the statement transmitted and attested, as has been mentioned, by the Board of Canvassers was " false and erroneous " in setting forth that the appellant had received a greater number of votes than the petitioner (appellee) and was duly elected County Commissioner, &c.; that on the contrary the appellee had received a larger number of votes than the appellant and was elected to said office and should have been declared elected; that the judges of election for each of the " election districts and voting precincts " of the county made mistakes against the appellee in counting the ballots, as related to the office of County Commissioner; that if said mistakes were corrected it would be made to appear that the appellee had received a greater number of votes than the appellant and was duly

elected; that in each of the election districts in the county the judges of election counted for the appellant ballots. marked otherwise than with a cross in the appropriate space on the official ballot after the party emblem or name, and not marked with a cross after the name of the appellant and to the right thereof in the blank space provided therefor; that ballots so marked amounted to a large number, more than one hundred, and to more than the majority by which the appellant was returned elected; that many legal ballots that were cast for the appellee in each of the election districts and voting precincts of the county were not counted for him, but were rejected by the judges of election; that ballots so rejected and not counted " aggregated more than fifty;" that in one of the districts of the county " certain ballots were cast by voters duly registered and entitled to vote in said district supposing said ballots to contain the name of " the appellee" as a candidate for said office of County Commissioner and were marked by said voters in the space opposite " the party emblem of the party of which the appellee was the candidate" with the view of casting their ballots" for the appellee as such candidate, " but that in fact the said ballots contained the name of a candidate for said office in Talbot County;" that said ballots were placed in the hands of the said voters by the proper election officials, as and for official ballots and were cast by said voters as such ballots with a view to voting for " the appellee" and thereby fraud was perpetrated upon said voters and upon the appellee; " that said ballots were not counted for" the appellee by the judges of election in said district and he was thereby deprived of a number of votes to which he was entitled; that more than one hundred votes were counted by the judges of election for the appellant " which contained no cross-mark anywhere upon said ballots, and such ballots were counted and included in the certificate of said judges from which the statement of the said Board of Canvassers was made up."

According to the prayer of the petition, the Court passed.

an order directing the appellant to answer the same, and he did so answer, and denied the truth of all the allegations in the petition of the appellee upon which the contention of the appellee was founded. The answer then averred that the appellant had received at the election in question a much larger and the appellee a much less number of legal votes than had been counted and returned for them respectively; that "in the various districts and precincts of" the county "the judges of election made mistakes in the counting of the ballots cast, to the prejudice" of the appellant by not counting for him ballots that were cast for him for the office of County Commissioner, and by counting for the appellee ballots which were not cast for him (the appellee) for said office; that "in the various precincts and districts of" the county ballots were counted for the appellee by the judges of election, "although from the said ballots it was impossible to determine that the choice of the voters, who cast the said ballots" for the office in question, was the appellee; that ballots were counted for the appellee which "were marked otherwise than with a cross in the appropriate space on the official ballot after the emblem or name" of the party of which the appellee was the candidate, "and were not marked by a cross after the name of the appellee and to the right thereof in the blank space provided therefor," and that if it was a mistake to count ballots of this description as legal ballots, as charged in the petition of the appellee, then the appellant claimed the benefit of such mistakes of this character as would count in his favor; that legal ballots were cast for the appellant which were not counted for him, "but were wrongfully rejected;" that in the district of the county in which it was charged in the petition of the appellee that ballots were furnished the voters with the names of candidates for Talbot County upon them there were ballots that ought to have been counted for the appellant, if the ballots in the said district of this description referred to in the petition of the appellee should be counted for the appellee, and the appellant claimed the benefit of such ballots in

his favor ; that ballots were counted for the appellee " which contained no cross-marks anywhere upon " the same, and if such ballots were not legal ballots, as charged in the petition of the appellant, then the appellant claimed the benefit of the error in counting and returning said ballots for the appellee.    Then the answer charges that in one of the election districts of the county, which is named, no legal election was held by reason of certain corrupt promises made to the voters therein to induce them to vote for the appellee and the local candidates upon the ticket with him, but as no evidence was offered in support of this allegation it needs no more particular mention.    The concluding paragraph of the answer is in the nature of a demurrer to the petition.

After the filing of the answer evidence was taken and submitted to the Court by both sides, and the proceedings culminated in the order of the Circuit Court set out in the record, which is as follows : " The above cause having been submitted to the Court after argument, and it appearing from the pleadings and evidence that at the election held in Somerset County on the 7th day of November, 1899, L. Wesley Beauchamp received 2,631 votes for the office of County Commissioner of Somerset County, and that Joseph Muir received 2,612 votes for said office, it is thereupon adjudged and declared this 10th day of April, 1900, by the Judges of the Circuit Court for Somerset County, that the said L. Wesley Beauchamp was duly elected to said office of County Commissioner of Somerset County at said election ; and it is further ordered and adjudged that the contestee, Joseph Muir, pay the costs of the contestant. "

In reviewing this action of the Circuit Court and determining its propriety we must ascertain from the record what questions are presented for our consideration.    It appears from a copy of the docket entries therein set out that questions were made upon the pleadings preliminary to the filing of the answer of the appellant.    The proceedings, however, which presented these questions were, as it seems,

purposely omitted from the record which shows that an order was filed by the counsel for appellant directing what proceedings should be included in the record and that all others should be omitted.   As the proceedings in question were not named in this order and are not contained in the record they are not only not before us but it is obvious the questions thereby raised below have been waived as therein presented.   The appellant's answer, however, concludes as follows:   That the appellant "says that the petition of the said L. Wesley Beauchamp and each and every reason alleged in said petition why the said L. Wesley Beauchamp should be declared elected is altogether insufficient in law, and the said Joseph Muir (appellant) prays that he may have the benefit of this defense as fully as if the same were set up by demurrer."   It does not appear from the record that this clause of the answer was the subject of a distinct ruling by the Court below and we may well suppose the reason to be that the question which seems to have been intended to be thereby presented had already been ruled upon by the Court in the preliminary proceedings which have been referred to.   Without intending to decide that such a question is properly presented in the answer here, especially if it had already been considered and determined before the filing of the answer, we may say that if it is intended by this concluding clause of the appellant's answer to raise the question of the sufficiency of the averments of the appellee's petition as grounds for contest we need only refer to the recent case of *Leonard* v. *Woolford*, decided by this Court at its last term *ante*, p. 626, in which the petition of the contestant was substantially identical in its averments with that of the contestant in this case, and this Court in ruling upon the distinct question as to the sufficiency of its averments there presented by demurrer to the petition held that these were sufficient.

Aside from this question it is apparent from the nature of the issues made upon the pleadings and of the order embodying the judgment of the Court, that if any error is to

be predicated of the action of the Court below, it must have relation to its action upon the evidence ; and must be either in the conclusion of fact upon the evidence or in rulings made upon its admissibility to prove the issues made by the pleadings. To determine the questions put at issue, the Court had necessarily to examine the ballots to which the pleadings referred. Before permitting the ballot boxes to be opened for an inspection of the ballots the Circuit Court very properly required the parties to the contest to furnish evidence tending to show the truth of their respective allegations as to the condition of the ballots and the errors and mistakes occurring in counting them as a foundation for an order to have the ballots produced. This testimony, as was all the testimony in the case, was taken under order of the Court before a justice of the peace and in the course of taking it a number of objections to questions asked of witnesses appear to have been noted at the time by the justice, but none of these objections appears to have been brought to the attention of the Court, or to have been made the subject of a ruling by the Court. The same appears as to objections to questions asked of witnesses after the ballot-boxes were opened and the ballots were produced for inspection.

The matters of evidence, of course, that are mainly decisive of a contest involving the issues that are made upon the pleadings in this case, are the ballots themselves and it becomes important therefore to ascertain how far the record brings before us any question in regard to these. It appears that as the several ballot-boxes were opened and the ballots produced, the counsel in the case having agreed that the original ballots should be used in evidence before the Court, certain of the ballots were noted by the counsel for the contestant, and were numbered consecutively from one up to the number noted for the particular precinct or district, and were marked by counsel and the justice of the peace for identification. In like manner certain other ballots were noted, numbered and marked on behalf of the contestee. In each instance this was followed by an agreement between counsel

that the ballots so noted, numbered and marked were counted or not counted for the contestee or the contestant, as the case might be, and where they were counted that they were included in the official returns and statement. It is not made to appear what specific objection was made to these ballots or to any of them ; nor what ruling the Court made with respect to any of them when offered in evidence except what is to be gathered from the opinion of the Court which is contained in the record.

We have not before us certified copies of the ballots so used in evidence nor any properly authenticated reproduction of them so as to enable this Court to see exactly the character and condition of the papers as they were offered. In the place of this we have a bulky exhibit which was made up, as we are informed, by taking blank ballots, to the number of 367, of the official form used in Somerset County, and marking them in lead pencil, in imitation of the voters' marks upon the ballots used in evidence, as they appeared when offered, and putting upon them the numbers and identifying marks, which were put on these original ballots as they were taken from the ballot-boxes and noted to be offered in evidence. It can hardly be deemed practicable to prepare an exhibit in this way of this character, that could be taken to import verity and accuracy, and to accept it as such an exhibit, would be to sanction an unsafe and dangerous practice, in the preparation of records in this class of cases for this Court. In addition to this the exhibit we have here bears no authentication of any kind. The imitation ballots are not separately and singly certified to as copies, nor is the exhibit certified to as a whole as containing true copies. We do not see, therefore, how we can treat this exhibit as properly before us. But suppose we do so treat it still, as has been seen, the record presents no question of law, no ruling of the Court below other than its final judgment, and no agreement or statement of facts showing what question of law was ruled upon by the trial Court ; and the only way in which we can review upon this record, the action

of the Court below is to take up these imitation ballots one
by one, examine them, determine from inspection whether
they are proper ballots and then count them for the proper
party or reject them as the case may be.    In doing this we
would be performing the original function of a judge of elec-
tion and not that of an appellate tribunal.

It has been held by this Court that such defects in the
record as have been referred to could not be aided by a
resort to the opinion of the court, from which an appeal
comes to this Court, *Trustees, etc.,* v. *Browne,* 39 Md. 160;
but suppose in this case we do look into the opinion of the
Court below, for the questions decided as to the ballots
which were offered in evidence, we there find that while the
Court referred to a number of these ballots, and gave reasons
for the action it took in regard to them there was quite a large
number, approximating a half of the number contained in
the exhibit which has been referred to, to which the Court
made no reference at all and with respect to these last men-
tioned ballots, therefore, we are left to grope for questions
that might affect the result on this appeal.    Such is the
record before us.    Now what are our powers in dealing
with it?    Our Code, Art. 5, sec. 9, embodying a statutory
provision of long standing (Act 1825 chap. 117), and for-
mulated into an express rule of this Court, which has been
applied and enforced in numerous decisions provides that
"in no case shall the Court of Appeals decide any point or
question which does not plainly appear by the record to
have been tried and decided by the Court below."    It has
been held that this provision does not apply in cases of
demurrer, and motions for arrest of judgment because in
such cases the whole record is brought to the view of the
Court. *Cockey, Admr.,* v. *Ensor,* 43 Md. 266.  In the case of
*Shaeffer, etc.,* v. *Gilbert,* 73 Md. 66,  it was held not to apply
to appeals from officers of registration coming to this Court
from the Circuit Courts, upon the ground that in such cases
the record itself discloses the questions passed upon and
decided by the Court below.    And we may say that in such

cases it is readily seen that the qualification of the voter and his right to registration being always the object of inquiry, the question as to these is necessarily presented by the record as a whole.   In the case of *Bragunier* v. *Penn*, 79 Md. 244, which was a case of a contested election it was held that the Act of 1825, ch. 117, did not there apply, but the Court was there dealing only with the action of the Court below in dismissing the petition of the contestant on the ground of its being insufficient in its allegations ; this action being taken on a motion by the contestee to dismiss based on that ground.   This case therefore fell within the reason of the exception as to demurrers and motions in arrest of judgment made in the cases which have held that the statutory provision in question did not apply to records presenting questions in that mode.

The case at bar is not within the reason that controlled the decisions just adverted to.   We cannot find presented on the record what questions were passed upon by the Court below nor any question at all, unless we proceed to discharge the function of a judge of election or of a canvassing board and pass upon the ballots accordingly.   We regard the question of the application of section 9, Art. 5 of the Code to cases of this class as having been settled by this Court in the case of *Leonard* v. *Woolford, supra.* There in reference to the mode in which questions arising upon the offer in evidence of the ballots should be presented it was said " Objection should have been made below to the counting of any ballot disputed by either party, and copies of such disputed ballots should have been incorporated in the record, with the ruling of the Court thereon.   As neither the original ballots nor any copies of any ballots are before the Court there is no legal question raised as to whether any ballot was or was not legally marked and counted.   In no case can this Court decide any point or question which does not plainly appear to have been decided below."   We think that sound practice requires an adherence to the rule here stated and applied.   Not finding any-

thing in the record before us as to which error can be as-
signed, the judgment of the Court below will be affirmed.
*Trustees, &c.*, v. *Browne*, 39 Md. *supra.*

*Judgment affirmed.*

(Decided November 15th, 1900.)