## BENJ. S. JONES ET AL. *vs.* STATE OF MARYLAND
### FOR THE USE OF ASSYRIA L. JONES:

*Action on an Injunction Bond—Damages.*

In action brought after the dissolution of a injunction on the injunction
bond, the plaintiff is not entitled to recover unless he proves that he
sustained loss by reason of the issuing of the injunction.

When the condition of an injunction bond is that the party shall prosecute
the writ with effect and otherwise to pay all the costs and damages that
may be occasioned by the issuing of the injunction, the plaintiff in an
action on the bond is entitled to recover from the sureties the costs
awarded him in the injunction case, if they had not been paid under the
decree in that case, but he can obtain only one satisfaction.

Appeal from the Circuit Court for Wicomico County (HOL-
LAND, J.)

The cause was argued before MCSHERRY, C. J., FOWLER,
BRISCOE, BOYD, PEARCE and JONES, JJ.

*John H. Handy*, for the appellants.

*E. Stanley Toadvin*, for the appellee. ·

FOWLER, J., delivered the opinion of the Court. ·

The plaintiff, Assyria L. Jones, brought this suit to recover
damages alleged to have been caused by the issuing of an in-
junction at the instance of Benjamin S. Jones. The injunction
was dissolved and this suit is upon the injunction bond against
the plaintiff in the injunction case and his sureties named in
the bond.

It appears from the testimony that Assyria L. Jones, the plaintiff in this case and the appellee in this Court, was the tendant of Benjamin S. Jones, the appellant here, and had been cultivating his farm under an agreement about which there was considerable controversy in the injunction suit  It is sufficient to say, however, that, as we have seen, the injunction was dissolved.

The case was originally instituted in the Circuit Court for Worcester County and was removed to Wicomico County. During the course of the trial two exceptions appear to have been taken, but only the second is properly before us—the first not having been authenticated by the signature of the Judge who sat in the case below.  The only question presented by the second exception is the propriety of the ruling of the Court upon the prayers.  The plaintiff's first and second prayers were granted and the defendant's first, third and sixth were rejected.

The first prayer of the plaintiff merely tells the jury that if they find the defendant procured the writ of injunction mentioned in the bond which was offered in evidence and that said injunction was afterwards dissolved by the Court, then said defendant did not prosecute the writ of injunction with effect or to a successful termination and their verdict must be for the plaintiff.  Plaintiff's second prayer sets forth the measure of damages, and instructs the jury that they may find such damages as they shall find from the evidence the plaintiff actually or directly sustained by reason of the injunction, including costs incurred by the plaintiff in the injunction suit, if they find any such costs were incurred by him.  These prayers were not seriously questioned by the defendant's counsel.  It was suggested, however, that the second is objectionable because it includes plaintiff's costs incurred in the injunction case as an element of damage.  But the bond on which this suit was brought expressly provides that these defendants shall pay such costs in case they failed in prosecuting their injunction with effect.  The fact that the decree in the injunction case awarded costs to this plaintiff cannot defeat his

right of action on the bond as against all three of the defend-
ants.    Although he may have a decree for costs in the injune-
tion case and a judgment for the same costs in this case, he.
can have but one satisfaction.    It does not appear, however,
that the decree for costs has ever been paid, and it is quite
possible that it may never be.    But however that may be it is
sufficient to say that the bond makes the sureties liable for
costs and this plaintiff is therefore entitled to look to *them* as
well as to their principal for payment.

We will now briefly consider the rejected prayers of the
defendant, namely, the first, third and sixth.

The first is a demurrer to the evidence, asking the Court to
instruct the jury that there is no legally sufficient evidence
that any loss or damage was sustained by the plaintiff in the
crops or produce *by reason of the injunction.*

We have carefully examined all the testimony contained in
the record and are forced to the conclusion that this prayer
should have been granted.    The evidence, so far as it is set
forth in the record, is most meagre and confused.    The plain-.
tiff it is true testifies at considerable length but it is impossible
to form any satisfactory conclusion from any of the testimony
whether the plaintiff's supposed or alleged losses were the
result of the injunction or not.    And then, at the end of his
testimony the plaintiff says:    "I lost none of the property
during the pendency of the injunction except the 51 bushels
Festus hauled away, and the oats fed to the stock."    Who is
Festus?    The record does not inform us—except that the
plaintiff testified that in July before the injunction was served
Festus at plaintiff's request divided the wheat crop and he
*supposed* the defendant sent him to the farm; that he (the
plaintiff) told the boys to put 50 bushels of the wheat in the
barn and the remainder he sent to market; that Festus hauled
the 50 bushels away; but whether Festus was acting or was
authorized to act for the defendant the testimony does not
disclose.    For all that appears Festus may have been acting
under the directions of the plaintiff.    In the present state of
the record, which we cannot help believing does not present

the case as it was presented in the Court below, we are compelled to hold that the case should have been withdrawn from the jury. But, under the circumstances, we are of the opinion that if the plaintiff, who recovered a judgment below for over $700, should so desire the case should be remanded for a new trial.

> *Judgment reversed with costs, with leave to plaintiff to apply for a new trial within sixty days from filing of this opinion.*

(Decided June 21st, 1905.)